IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VALENTINE DELIBERTIS AND | : | |
| KATHLEEN DELIBERTIS | : | |
| v. | : | CIVIL ACTION |
| | : | |
| POTTSTOWN HOSPITAL COMPANY | : | |
| LLC, JONATHAN BUCKLEY, MD, | : | |
| MARTA JIMENEZ-DE LA CRUZ, MD, | : | |
| AND POTTSTOWN CLINIC COMPANY, | : | |
| LLC | : | NO. 14-6971 |

MEMORANDUM

Dalzell, J.                                                                    January 21, 2016

I.    **Introduction**

We consider here the partial motion for summary judgment the defendants Pottstown

Hospital Company, LLC and Pottstown Clinic Company, LLC (hereinafter collectively referred

to as "Pottstown") filed to dismiss plaintiffs Valentine Delibertis and Kathleen Delibertis's

claims brought under the Emergency Medical Treatment and Active Labor Act ("EMTALA"),

42 U.S.C. § 1395dd, and defendant Dr. Marta Jimenez-De La Cruz's unopposed motion for

summary judgment to dismiss the negligence claim the plaintiffs brought against her.[1]

We have jurisdiction over these claims pursuant to 28 U.S.C. § 1331 and § 1367.

For the reasons set forth below, we will grant in part and deny in part Pottstown's motion

for summary judgment and dismiss with prejudice plaintiffs' "failure to stabilize" claim under

---

[1] Defendant Dr. Jonathan Buckley submitted a brief joining Pottstown's motion for summary judgment on the EMTALA claims.  This is puzzling, as plaintiffs have not asserted any claim against Dr. Buckley under EMTALA.  Moreover, as Dr. Buckley himself points out, plaintiffs could not pursue this claim against him because there is no cause of action against physicians under EMTALA, and so we will dismiss this claim as moot.

EMTALA.[2]  We will also grant Dr. Jimenez-De La Cruz's unopposed motion for summary

judgment, dismiss with prejudice the negligence claim against Dr. Jimenez-De La Cruz, and

enter judgment in favor of Dr. Jimenez-De La Cruz and against the plaintiffs.


II.     **Factual and Procedural History**

On February 24, 2014, plaintiff Valentine Delibertis arrived at Pottstown Memorial

Medical Center, accompanied by his wife Katherine Delibertis.  Delibertis Assessment Notes at

1.  Mrs. Delibertis told Dr. Buckley, the treating physician in the emergency room, that she and

her husband were at the hospital because she believed that Mr. Delibertis was having a stroke.

K. Delibertis Dep. at 22: 21-24, 23: 1-15.  Specifically, Mrs. Delibertis stated that her husband

had become confused while driving and that he "was not responding to [Mrs. Delibertis] and it

appeared he was having an ataxic RLE while trying to find the brake." Delibertis Medical

Record at 1.  She also stated that she told Dr. Buckley that (1) she thought her husband's face

was drooping, (2) his speech was slurred, (3) he was dazed and confused, and (4) he had lost

feeling in his foot.  K. Delibertis Dep. at 23: 3-5, 24: 1-20, 106: 18-22, 122: 17-21.  Dr. Buckley,

however, wrote in the medical record that Mr. Delibertis had "[n]o slurred speech or facial droop

that wife noticed."  Delibertis Medical Record at 1.

Dr. Buckley evaluated Mr. Delibertis in the emergency room.  He administered several

tests and found that Mr. Delibertis had an NIH Stroke Scale of zero, indicating no signs of a

stroke, and a perfect Glasgow Coma Score of 15, Delibertis Assessment Notes at 1, that Mr.

Delibertis was alert and oriented times three, meaning that he was aware of his person, place, and

time, and that his speech patterns and heart rate were normal.  Id.  Even with these sterling

results, Dr. Buckley wrote in the record for Mr. Delibertis's visit that "[p]atient's condition

---

[2] To be sure, our decision today only addresses EMTALA and not the negligence claims
brought by the plaintiffs against Dr. Buckley and Pottstown Medical Center.

represents a certified medical emergency." Delibertis Medical Record at 4.  After consulting with Dr. Marta Jimenez-De La Cruz about Mr. Delibertis, Dr. Buckley determined that discharge was appropriate. Id.  Notably for plaintiffs' EMTALA claims, Dr. Buckley testified that he treated Mr. Delibertis as he would any other patient who came to the hospital after potentially suffering a stroke.  Defs.' Statement of Material Facts at ¶ 12.  But, Pottstown has not provided any evidence as to whether these practices were consistent with the hospital's own internal policies and procedures, and it is clear from Dr. Buckley's deposition that he was unaware of the exact EMTALA procedures and policies in place at the hospital.  Buckley Dep. at 18: 7-24, 19: 1-6.

Approximately ninety minutes after Mr. Delibertis arrived at the hospital, he was discharged with instructions for an office follow up with Dr. Jimenez-De La Cruz.  Dr. Buckley wrote at the time of Mr. Delibertis's discharge that "patietn (sic) with no return of symptoms in ED.  Discussed with Dr. Jimenez, who recommends contionuing (sic) work up as outpatient as symptoms were primarily peripheral and have completely resolved.  Patient and family in agreement.  Patient feels well."  Delibertis Medical Record at 4.  Moreover, Dr. Buckley wrote that Mr. Delibertis had "received printed discharge instructions," and that the "[d]ischarge plans [were] discussed with patient who verbalize[d] understanding and willingness to comply."  Id. But a mere three hours later, Mr. Delibertis returned to the ER and was treated by a different doctor, Chad Gunsolly, who concluded that Mr. Delibertis had indeed suffered a stroke.  Pls.' Statement of Material Facts at ¶ 46.

Plaintiffs initiated this action and brought EMTALA claims against Pottstown and negligence claims against Pottstown, Dr. Buckley, and Dr. Jimenez-De La Cruz.  See Compl. at ¶¶ 37-54.  Plaintiffs support their claims with an expert report from Dr. Kayur Patel, who asserts that Pottstown violated EMTALA's "failure to screen" and "failure to stabilize" provisions and

that Dr. Buckley was negligent in his care of Mr. Delibertis.  Patel Report at 3-5.  But Dr. Patel's report in no way asserts that Dr. Jimenez-De La Cruz was negligent in her treatment of Mr. Delibertis.

## III.   <u>Legal Standard</u>

Parties may move for summary judgment on any claim or defense in the case, and the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed R. Civ. P. 56(a).  A party moving for summary judgment bears the initial burden of informing the district court of the basis for its argument that there is no genuine issue of material fact by "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (internal quotations omitted).  If the moving party meets this initial burden, Rule 56 then obliges the non-moving party to show, via submissions beyond the pleadings, that genuine factual issues exist for trial. <u>Id.</u> at 324.

There is a genuine issue of material fact only when there is sufficient evidence such that a reasonable jury could find for the party opposing the motion.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251-52 (1986) (explaining further that a mere scintilla of evidence is insufficient).  Material facts are those that would affect the outcome of the case under the governing law.  <u>Id.</u> at 248.  We may not make credibility determinations or weigh the evidence, and we must draw all reasonable inferences in favor of the non-moving party.  <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150 (2000); <u>Amour v. County of Beaver, PA</u>, 271 F.3d 417, 420 (3d Cir. 2001).  If there are "unexplained gaps in the materials submitted by the moving party…pertinent

to material issues of fact," then summary judgment is inappropriate.  O'Donnell v. United States, 891 F.2d 1079, 1082 (3d Cir. 1989) (internal quotations omitted).  Our function is to determine whether there is a genuine issue for trial, and we may not prevent a case from reaching a jury simply because we favor one of several reasonable views of the evidence.  Abraham v. Raso, 183 F.3d 279, 287 (3d Cir. 1999).

IV.    **Discussion**

Pottstown moves for summary judgment on plaintiffs' EMTALA claims found in Counts I and II of the complaint, and Dr. Jimenez-De La Cruz moves for summary judgment on the negligence claim brought against her in Count V of the complaint.  We consider each motion separately.

A.    **Pottstown's Motion for Summary Judgment on Plaintiffs' EMTALA Claims**

As rehearsed, Pottstown moves for summary judgment on plaintiffs' EMTALA claims, and we will grant in part and deny in part Pottstown's motion.  Congress enacted EMTALA in 1986  in response to concerns that "hospitals either were refusing to treat certain emergency room patients or transferring them to other institutions."  Torretti v. Main Line Hospitals, Inc., 580 F.3d 168, 173 (3d Cir. 2009) (citing Medicare Program; Clarifying Policies Related to the Responsibilities of Medicare-Participating Hospitals in Treating Individuals with Emergency Medical Conditions, 68 Fed. Reg. at 53,222-01).  EMTALA requires hospitals to administer appropriate medical screening to individuals presented for emergency treatment, stabilize any known emergency medical conditions, and restricts a hospital's ability to transfer unstable patients to other facilities.  42 U.S.C. § 1395dd(a-c).  Our Court of Appeals has adopted the Tenth Circuit's summary of a hospital's obligations under EMTALA, noting that:

> a hospital has two primary obligations under EMTALA: (1) if an individual arrives at an emergency room, the hospital must provide appropriate medical screening to determine whether an emergency medical condition exists; and (2) if the hospital determines an individual has an emergency medical condition that has not been stabilized, it may not transfer the patient unless certain conditions are met.

Torretti, 580 F.3d at 173 (citing Urban v. King, 43 F.3d 523, 525 (10th Cir. 1994)).  More succinctly, "EMTALA requires hospitals to provide medical screening and stabilizing treatment to individuals seeking emergency care in a nondiscriminatory manner."  Id.  EMTALA does not, however, create a federal cause of action for malpractice, and "liability is determined independently of whether any deficiencies in the screening or treatment provided by the hospital may be actionable as negligence or malpractice."  Id. at 173-74 (citing Summers v. Baptist Med. Ctr. Arkadelphia, 91 F.3d 1132, 1137 (8th Cir. 1996)).

### 1.    Pottstown's Motion For Summary Judgment On Plaintiffs' "Failure To Screen" Claim

Pottstown first moves for summary judgment on plaintiffs' "failure to screen" claim under EMTALA.  See Compl. at ¶¶ 37-38.  We will deny Pottstown's motion for summary judgment on this claim. The screening requirement of EMTALA states that hospitals are required to "provide for an appropriate medical screening examination within the capability of the hospital's emergency department…to determine whether or not an emergency medical condition . . . exists." 42 U.S.C. § 1395dd(a).  EMTALA does not define the term "appropriate medical screening," but courts have interpreted it as meaning that "patients are entitled under EMTALA…to be treated as other similarly situated patients are treated within the hospital's capabilities." Byrne v. Cleveland Clinic, 519 F. App'x 739, 742 (3d Cir. 2013) (quoting Summers, 91 F.3d at 1138).  Moreover, "[i]t is up to the hospital itself to determine what its

screening procedures will be.  Having done so, it must apply them alike to all patients."

<u>Summers</u>, 91 F.3d at 1138.

      Courts in our district have further found that, when defendant hospitals move for summary judgment on a "failure to screen" claim under EMTALA, the hospital must provide evidence of its screening procedures or policies for the medical condition in question, with the most analogous case to our matter being <u>Blake v. Main Line Hospitals</u>, No. 12-3456, 2014 WL 1345973 (E.D. Pa. Apr. 3, 2014).  There, Chief Judge Tucker denied a hospital's motion for summary judgment on the plaintiff's "failure to screen" claim after she found that summary judgment was inappropriate "because one of the foundational factual determinations in assessing an EMTALA screening claim remains unresolved: what the hospital's standard screening procedures <u>are</u>." <u>Id.</u> at *4 (emphasis in original).  In <u>Blake</u>, the doctor who performed the screening talked at length about the standard procedures at different hospitals where she had worked, and <u>her own usual practice</u>, but did not specify the standard procedures at the <u>hospital</u> being sued in that case.  <u>Id.</u>  Chief Judge Tucker went so far as to dismiss the defendant's argument that the treating doctor followed her usual practice, and thus there was no failure to screen, since "only a <u>particular</u> hospital's screening procedures are relevant to an EMTALA screening claim; the statute is not premised on a general appropriate standard of care."  <u>Id.</u> (internal citations omitted) (emphasis original).  While Chief Judge Tucker noted that the standard procedures need not be written or formal, there must be <u>some</u> evidence detailing those screening policies presented by the hospital.  <u>Id.</u> at *5 (citing <u>del Carmen Guadalupe v. Negron Agosto</u>, 299 F.3d 15, 22 (1st Cir. 2002)).  Due to the lack of information regarding the hospital's standard screening procedures, Chief Judge Tucker concluded that "[t]he record…simply does not allow [us] to resolve Plaintiff's claim because of this deficiency."  <u>Id.</u> at *4.

Here, our case presents cognate facts.  In their briefs, defendants stress repeatedly that Dr. Buckley followed his own standard procedures when he screened Mr. Delibertis in the emergency room.  See, e.g., Defs.' Brief Supp. Mot. Summ. J. at 14 ("Dr. Buckley followed his usual protocol…) and 15 ("Most importantly, the testing ordered by Dr. Buckley was consistent with his standard protocol…); Defs.' Reply Supp. Mot. Summ. J. at 12 ("For the purposes of EMTALA, what is most significant is that Dr. Buckley followed his usual protocol…[h]e did not treat Mr. Delibertis any differently than other patients in the emergency room in Plaintiff's condition.").  But, the consistency of an individual doctor's treatment among patients is not the EMTALA standard.  Instead, EMTALA requires a hospital to determine its screening procedures and apply them uniformly to all patients.  It is clear from Dr. Buckley's deposition that he was unaware of the exact EMTALA procedures and policies in place at the hospital.  Buckley Dep. at 18: 7-24, 19: 1-6.

Pottstown failed to produce any evidence that Dr. Buckley's usual protocol matched the hospital's for treating patients in Mr. Delibertis's condition and it is not the Court's job to search the record for such evidence.   Nevertheless, a thorough review of the record turned up no evidence of the hospital's internal policies or procedures for screening patients, let alone whether Dr. Buckley's own procedures were consistent with hospital practice.   As Judge Posner put it so pungently, "[j]udges are not like pigs, hunting for truffles buried in briefs."  United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991).  It is even more offensive to the pig when the truffle it spent all day searching for does not exist.

Like the defendants in Blake, Pottstown has failed to provide the requisite information on its own screening procedures that would allow us to determine whether Mr. Delibertis was

treated differently than other similarly situated patients.   Therefore, a genuine issue of material

fact remains, precluding summary judgment on plaintiffs' "failure to screen" claim.

### 2.   Pottstown's Motion For Summary Judgment On Plaintiffs' "Failure To Stabilize" Claim

Pottstown next moves for summary judgment on plaintiffs' "failure to stabilize" claim

brought pursuant to EMTALA in Count II of the complaint.   See Compl. at ¶¶ 39-40.   We will

grant Pottstown's motion for summary judgment on this claim.   EMTALA provides that when a

hospital determines that an individual arriving at the emergency room has an emergency medical

condition it must provide "such further medical examination and such treatment as may be

required to stabilize the medical condition, or…transfer of the individual to another medical

facility in accordance with subsection (c) of this section."   42 U.S.C. § 1395dd(b)(1).   A cause of

action under this provision of EMTALA is generally described as a "stabilization" or "failure to

stabilize" claim.   Our Court of Appeals has held that "[u]nder this theory, EMTALA requires

that [the plaintiff] (1) had an emergency medical condition; (2) the hospital actually knew of that

condition; [and] (3) the patient was not stabilized before being transferred."   Torretti, 580 F.3d at

178 (quoting Baber v. Hosp. Corp. of America, 977 F. 2d 872 883 (4th Cir. 1992)) (internal

quotations omitted).

As to the first requirement for a "failure to stabilize" claim, EMTALA defines an

"emergency medical condition" as

> a medical condition manifesting itself by acute symptoms of
> sufficient severity (including severe pain) such that the absence of
> immediate medical attention could reasonably be expected to result
> in--(i) placing the health of the individual (or, with respect to a
> pregnant woman, the health of the woman or her unborn child) in
> serious jeopardy, (ii) serious impairment to bodily functions, or
> (iii) serious dysfunction of any bodily organ or part…

42 U.S.C. § 1395dd(e)(1)(A).  Regarding the second requirement, our Court of Appeals has stated that <u>actual</u> <u>knowledge</u> of the emergency medical condition on the part of the hospital is required for a plaintiff to succeed on an EMTALA claim under the "failure to stabilize" theory." <u>Torretti</u>, 580 F.3d at 178.  The question of whether a hospital <u>should</u> have known about an emergency medical condition is irrelevant for the purposes of EMTALA.  Finally, as to the third requirement, EMTALA states that:

> The term 'to stabilize' means, with respect to an emergency medical condition… to provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual.

42 U.S.C. § 1395dd(e)(3)(A).  It further defines the term "stabilized" to mean, "with respect to an emergency medical condition described in paragraph (1)(A), that no material deterioration of the condition is likely, within reasonable medical probability, to result from or occur during the transfer of the individual from a facility."  42 U.S.C. § 1395dd(e)(3)(B).

Here, Pottstown asserts that the plaintiffs have not produced evidence that satisfies any of the three requirements in a "failure to stabilize" claim.  First, the defendants aver that Mr. Delibertis did not have an emergency medical condition under EMTALA's meaning.  We disagree.  Mrs. Delibertis also stated that she told Dr. Buckley she thought her husband had suffered a stroke and she thought his face was drooping, that he had lost feeling in his foot, and that his speech was slurred.  While Dr. Buckley disputes that Mrs. Delibertis said this to him and instead insists Mr. Delibertis was admitted for an altered mental state, we may not make credibility determinations on summary judgment. We therefore find that there is a dispute of material fact as to whether Mr. Delibertis was suffering from an emergency medical condition.

Pottstown also asserts that the hospital had no actual knowledge of any alleged emergency medical condition, and thus summary judgment is warranted.  Again, we disagree. Dr. Buckley knew that Mr. Delibertis had come to the emergency room complaining of a possible stroke.  Mrs. Delibertis testified at her deposition that she informed Dr. Buckley that she and her husband were at the hospital because she believed that Mr. Delibertis was having a stroke.  She also stated that she told Dr. Buckley that she thought her husband's face was drooping, that his speech was slurred, that he appeared confused, and that he had lost feeling in his foot.  Most notably, Dr. Buckley wrote in the record for Mr. Delibertis's visit that "[p]atient's condition represents a certified medical emergency."[3] Delibertis Medical Record at 4 (emphasis added).  We find that there are, at minimum, genuine disputes of material fact as to whether the hospital actually knew that Mr. Delibertis was suffering from an emergency medical condition as contemplated under EMTALA.

Pottstown finally asserts that Mr. Delibertis was stabilized when he was discharged from the hospital, and we agree.  As Pottstown stated in its brief in support of its motion, "every sign known to the hospital at the time of discharge showed a patient who was stable and in no acute distress."  Defs. Brief Supp. Mot. Summ. J. at 19.  Mr. Delibertis had both a perfect Glasgow Coma Score of fifteen (15) and an NIH Stroke Scale score of zero, indicating no signs of a stroke.  He was stated to be alert and oriented times three, meaning that he was aware of his person, place, and time.  His speech patterns and heart rate were normal.  In detailing the decision to discharge Mr. Delibertis, Dr. Buckley wrote that "patietn (sic) with no return of symptoms in ED.  Discussed with Dr. Jimenez, who recommends contionuing (sic) work up as

---

[3] Pottstown avers that the plaintiffs are "[g]rasping at straws," and "miscite and mischaracterize a routine computer billing entry that states the patient's condition had represented a 'certified medical emergency.'"  Defs.' Reply at 18.  If citing Mr. Delibertis's hospital medical records amounts to "grasping at straws," then that straw is quite sturdy indeed.

outpatient as symptoms were primarily peripheral and have completely resolved.  Patient and family in agreement.  Patient feels well."  Delibertis Medical Record at 4.  Moreover, Dr. Buckley noted that Mr. Delibertis has "received printed discharge instructions," and that the "[d]ischarge plans [were] discussed with patient who verbalize[d] understanding and willingness to comply."  Id.

Plaintiffs counter that the record evidence shows Dr. Buckley knew that Mr. Delibertis "may be suffering from a TIA as a result of arterial disease," and that he "knew that Mr. Delibertis was at heightened risk to have the TIA progress into a stroke…"  Pls.' Brief in Opp'n at 23.  While these facts can support an alleged negligence claim, they cannot support a "failure to stabilize" claim under EMTALA.  The medical record in this case shows that Mr. Delibertis, while in the hospital, was stabilized to the point where it was medically improbable that he was likely to suffer material deterioration of his condition as the result of his release.  Plaintiffs also aver that Mr. Delibertis's subsequent deterioration and complete stroke he suffered a short time later is evidence that he was not stable when he was discharged.  This, again, misses the point, as Mr. Delibertis was stabilized at the time of his release under the definition provided under EMTALA.  Finally, Dr. Patel's report is unpersuasive on this issue, as his conclusion that Mr. Delibertis was "unstable" at the time of his release is not supported by the medical evidence of record.

We find that there is no dispute of material fact as to whether Mr. Delibertis was stabilized at the time of his release, and we will grant Pottstown's motion for summary judgment on plaintiffs' "failure to stabilize" claim.

**B.      Dr. Jimenez-De La Cruz's Motion for**
**         Summary Judgment on Plaintiffs' Negligence Claim**

Defendant Dr. Jimenez-De La Cruz moves for summary judgment on the negligence claim brought against her by the plaintiffs, and we will grant her unopposed motion.  To sustain a medical malpractice action against a doctor under Pennsylvania law, a plaintiff must prove four elements: (1) that the doctor owed a duty of care to the patient; (2) the doctor breached that duty; (3) the breach was the proximate cause of plaintiff's harm; and (4) the damages suffered were a direct result of this harm.  See Montgomery v. So. Phila. Medical Group, 656 A.2d 1385, 1390 (Pa. Super. Ct. 1995).  To establish a prima facie case, a plaintiff "must present expert testimony to establish the applicable standard of care, the deviation from that standard, causation, and the extent of the injury." Toogood v. Rogal, 824 A.2d 1140, 1145 (Pa. 2003); see also Brown v. Hahnemann University Hospital, 20 F. Supp. 3d 538, 542 (E.D. Pa. 2014) (emphasis in original) (stating that "the general rule under Pennsylvania law is that expert testimony is required in order for a plaintiff to establish the elements of a prima facie case of medical malpractice").

The expert report of Dr. Patel focused on the actions and alleged negligence of Dr. Buckley and did not include any language that implicates Dr. Jimenez-De La Cruz for medical malpractice or negligence.  We therefore find that the plaintiffs have failed to sustain their prima facie case against Dr. Jimenez-De La Cruz.  We will grant her motion for summary judgment, dismiss with prejudice the negligence claim brought against her, and enter judgment in her favor and against plaintiffs.

**V.      Conclusion**

Defendants Pottstown Hospital Company, LLC and Pottstown Clinic Company, LLC have moved for summary judgment on the plaintiffs' EMTALA claims.  We will grant

Pottstown's motion in regards to plaintiffs' "failure to stabilize," claim and dismiss Count II of the complaint with prejudice.  But, we will deny the defendants' motion with regard to plaintiffs' "failure to screen" claim. Dr. Marta Jimenez-De La Cruz has moved for summary judgment on the plaintiffs' negligence claim against her, and we will grant her unopposed motion, dismiss the plaintiffs' negligence claims against her with prejudice, and enter judgment in favor of Dr. Jimenez-De La Cruz and against the plaintiffs.

BY THE COURT:

__/s/ Stewart Dalzell, J.
Stewart Dalzell, J.